BENJAMIN F. WILLIAMS *vs.* FRANCIS BACON & others.

An agent, in this state, of coal merchants residing in Philadelphia made a contract here for
the sale of coal for the price of more than fifty dollars, and a month later, in answer to
the purchaser's request for "a statement of our coal engagement," wrote the purchaser
a letter, stating the kinds, amounts and prices of the coal, deliverable at Philadelphia
requesting the purchaser to forward vessels, and saying " we will put the coal on board;
our people will use all exertions to procure vessels," but not otherwise mentioning his
principals, and signed the letter with his own name. *Held,* that this letter was a suffi-
cient memorandum of the contract to take the case out of the statute of frauds, and that
the purchaser might maintain an action against the principals for not delivering the
coal, although the entry made by the agent in his books, and his letter to his principals
on the day of the contract, differed somewhat, in the particulars of the contract, from
his letter to the purchaser.

ACTION OF CONTRACT. The declaration alleged that the de-
fendants, on or about the 1st of June 1853, contracted to sell
and deliver to the plaintiff, on board vessel at Philadelphia, on
demand, five hundred tons red ash egg and stove coal at the
price of $3.70 per ton; and three hundred tons white ash coal
at the following prices, namely, one hundred tons white ash egg
coal at $3.45 per ton, one hundred tons white ash stove coal,
at $3.45 per ton, and one hundred tons white ash lump coal
at $3.60 per ton; and that the plaintiff, on the 16th of August
1853, demanded said coal of the defendants at Philadelphia, but
they then and ever since neglected and refused to deliver the
same or any part thereof. The defendants, in their answer,
denied any purchase of coal by the plaintiff of the defendants,
or any agreement of the defendants to deliver coal; and also
relied on the statute of frauds.

At the trial in the court of common pleas, Hale Remington,
an agent residing at Fall River, of the defendants, who lived in
Philadelphia, being called as a witness for the plaintiff, testified
as follows: On the 3d of June 1853, he made a verbal contract
with the plaintiff, at Taunton; and on the same day, at Fall
River, his clerk, by his order, entered in his book of sales, on a
page headed " Sales on account of F. Bacon & Company," the
following memorandum (which was not signed) : " Sold to B.
F. Williams, of Taunton, 500 tons egg and stove red ash; 200

tons egg $3.70, 300 tons stove $3.70. Sold 200 tons egg and stove white ash; 100 lump $3.60, 100 egg $3.45, 100 stove $3.45." On the same day he wrote a letter to the defendants, (which was produced upon the call of the plaintiff,) in which he said: "I sold this morning to B. F. Williams, of Taunton, to be shipped to Dighton, Mass., as follows: $3.70 for R. A. and $3.45 for W. A., 300 tons R. A. stove, 200 tons R. A. egg, 100 tons W. A. egg, 100 tons W. A. stove, 700 tons, all to be delivered before August 1st. You may ship it early in July, or before, if it suits better to do so." On the 11th of July he received a letter from the plaintiff, asking for "a statement of our coal engagement;" to which he replied by the following letter: "Fall River, 11 July, 1853. Benjamin F. Williams, Esq. Taunton, Dear Sir: Your favor of this date is before us. In reply would say, that I have agreed to sell you 200 tons red ash stove coal at $3.70, 300 tons red ash egg at $3.70, 100 tons white ash egg at $3.45, 100 tons white ash stove $3.45, 100 tons white ash lump $3.60. The above prices to be charged deliverable on board vessel at Philadelphia. The coal is now ready for delivery, and you will please forward vessels as soon as you please, and we will put the coal on board. Our people will use all exertion to procure vessels at going rates of freight, and I presume they will succeed. If not, you must send vessels for it. Freights are now $1.50 and $1.45 to Fall River. Coal is now worth, at Philadelphia, $3.85, and I think the sooner you get your coal, the safer for you. Yours truly. Hale Remington." On the 8th of August he signed and gave the plaintiff an order addressed to the defendants, and thus expressed: "Please deliver the bearer, for B. F. Williams, of Taunton, Mass., coal as he may order it from time to time — red ash, egg or stove, as he may choose, 500 tons; white ash, 200 tons, one half lump, balance egg or stove." And there was evidence that the plaintiff, on the 16th of August, presented this order to the defendants, who refused to accept it.

Upon this evidence, *Hoar*, J. ruled that the action could not be maintained, and directed a verdict for the defendants; and the plaintiff alleged exceptions.

*E. H. Bennett*, for the plaintiff. 1. Remington's letter to the plaintiff of July 11th is a sufficient "note or memorandum in writing of the bargain" to take the case out of the statute of frauds, Rev. Sts. *c.* 74, § 4. It is no objection that it was made after the contract was concluded, and so was only a recital of it. *Gale* v. *Nixon*, 6 Cow. 445. *Ide* v. *Stanton*, 15 Verm. 685. *Jackson* v. *Lowe*, 1 Bing. 9. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238.

2. Remington's letter to the defendants of June 3d shows that the contract declared upon was in fact made by him in their behalf; and it is not necessary that the principal's name should be signed to the memorandum; it is sufficient if it states the names of the vendee and of the vendor's agent. *Batturs* v. *Sellers*, 5 Har. & Johns. 117. *Pugh* v. *Chesseldine*, 11 Ohio, 109. *Allen* v. *Bennet*, 3. Taunt. 169. *White* v. *Proctor*, 4 Taunt. 209. *Hicks* v. *Hankin*, 4 Esp. R. 114. *Coles* v. *Trecothick*, 9 Ves. 234. *Salmon Falls Manuf. Co.* v. *Goddard*, 14 How. 454, 455.

3. The variance between the letter of July 11th and the other papers cannot avail the defendants. If they made any question which contained the true contract, that was a question for the jury. The only question here open is whether there was a memorandum of any contract.

*T. D. Eliot*, for the defendants. 1. The letter of July 11th is not a sufficient note or memorandum to take the case out of the statute. It was not part of the *res gestæ*, but a statement, not under oath, and made solely for the benefit of the plaintiff, of a contract as to which Remington had then ceased to be agent; and could not therefore affect his principals. *Haven* v. *Brown*, 7 Greenl. 424. *Fairlie* v. *Hastings*, 10 Ves. (Amer. ed.) 123 & note. *Stiles* v. *Western Railroad*, 8 Met. 46. *Cooley* v. *Norton*, 4 Cush. 95. Story on Agency, §§ 113, 134.

2. It does not state the parties. Long on Sales, (Rand's ed.) 54, 56. Smith Merc. Law, (1st Amer. ed.) 494. Addison on Con 80. *Champion* v. *Plummer*, 1 New Rep. 252. *Klinitz* v. *Surry*, 5 Esp. R. 267. *Bailey* v. *Ogden*, 3 Johns. 399. *Sherburne* v. *Shaw*, 1 N. H. 157. *Nichols* v. *Johnson*, 10 Conn. 192. If Remington had been agent for other parties in Philadelphia, this

Williams *v.* Bacon & others.

letter would have been as good against them, as against the de-
fendants. It does not purport to be signed by or in behalf of any
one but Remington. It may bind him, but no one else. *Brad-
lee* v. *Boston Glass Manufactory,* 16 Pick. 350. *Hawkins* v.
*Chace,* 19 Pick. 503. *Finney* v. *Bedford Commercial Ins. Co.*
8 Met. 350. *Taber* v. *Cannon,* 8 Met. 456. *Savage* v. *Rix,*
9 N. H. 263. *Graves* v. *Boston Marine Ins. Co.* 2 Cranch, 419.
1 Parsons on Con. 48. 1 Amer. Lead. Cas. (3d ed.) 602.

3. It states a different bargain from that proved by Reming-
ton's testimony and the entry in his book. *Thornton* v. *Kemp-
ster,* 1 Marsh. 355. *Sievewright* v. *Archibald,* 17 Ad. & El. N. R.
103. Addison on Con. 82. Smith Merc. Law, (1st Amer. ed.)
461, 493. The bargain proved was for 200 tons egg and 300
tons stove red ash, and did not define where the coal was to be
delivered, thus leaving it to be delivered at the seller's place of
business; the letter says, 200 tons stove and 300 tons egg, and
makes it all " deliverable on board vessel at Philadelphia." The
letter of Remington to the defendants omits 100 tons lump;
calls for a shipment to Dighton by the defendants; and a de-
livery before the 1st of August. And the order differs from all
these, in stating the kind as 500 tons egg *or* stove, deliverable to
the plaintiff " as he may order it."

MERRICK, J. The presiding judge ruled at the trial that the
evidence adduced by the plaintiff was insufficient to enable him
to maintain this action, and directed a verdict, which was there-
upon returned, for the defendants. To determine whether that
ruling was correct, it is necessary to keep in view the distinction
between evidence of a contract and evidence of a compliance
with the provisions of the statute of frauds in relation to it; for
the defendants, in attempting to sustain the ruling, do not now
deny that the testimony of Hale Remington afforded adequate
proof of a verbal contract between the parties, whereby the
plaintiff agreed to purchase, and the defendants to sell the quan-
tity and various kinds of coal mentioned in the declaration; but
they insist that no note or memorandum in writing was ever
made of it and signed by themselves or by any authorized per-
son in their behalf. And they contend that the letter of Rem-

ington of the 11th of July 1853, which is relied on by the plaintiff as a sufficient compliance with the provisions of the statute to give validity to the contract and make it obligatory upon them, cannot properly be allowed to have that effect, first, because it was no part of the *res gestæ*, and constituted no part of the negotiation between the parties, and is only a narrative of a past transaction; and secondly, because it does not purport on its face to be, and is not in fact, signed by them or by any duly authorized person in their behalf.

A note or memorandum in writing of an oral contract is essentially different from a written contract. The latter supersedes and takes the place of all preceding negotiations, and is conclusive evidence of the stipulations and bargain between the parties. But the former may be made at any time after the parties have entered into engagements with each other by a verbal agreement. *Sievewright* v. *Archibald,* 17 Ad. & El. N. R. 107, 114. In the very nature of such transactions, the memorandum must be posterior in point of time to the contract of which it is the record. And it has accordingly often been determined, that documents and letters, though they were all written subsequent to the conclusion of the bargain, may be coupled together, if it appear that they all had relation to it, for the purpose of showing that a written memorandum of it was duly made and signed by the party to be charged. *Allen* v. *Bennet,* 3 Taunt. 169.

The evidence produced upon the trial in the present case had a direct tendency to prove that a verbal contract for the sale of coal, as is alleged in the declaration, was made by and between the parties at Taunton, on the 3d of June 1853. In that negotiation, Remington acted for the defendants. He was their duly constituted agent, and was authorized in that capacity to sell, or to contract for the sale of coal on their account. Such an agency implied the right to do whatever act was necessary to make the engagements he entered into, in the exercise of the power it conferred upon him, binding and obligatory upon his principals. He was therefore legally competent, and it was lawful for him, after having verbally agreed with the plaintiff, for the

defendants, to sell him certain quantities of coal at stipulated prices, to make a written note or memorandum of the bargain, and sign it for them and in their behalf. And this he might lawfully do at any time before his authority to sell, or to complete a contract of sale, was revoked or annulled. On the 11th of July he was asked by the plaintiff for "a statement of our coal engagement;" to which request he replied in his letter of that date. A jury would be well warranted in inferring from the evidence in the case — and indeed we think they could justly arrive at no other conclusion — that the request and answer both referred to the bargain which had been previously made by them on the 3d of June, at Taunton. If so, the letter was a full and complete memorandum of the bargain. It states explicitly the agreement to sell, the price, quantities and description of the different kinds of coal sold, the place where it was to be delivered, and the time when the payment for. it was to be made.

This memorandum therefore, containing all the elements of a complete bargain, was sufficient to meet the requirements of the statute, if it was signed in behalf of the defendants by a person thereunto duly authorized. The letter was signed by Remington; and he does not name his principals, or express, in terms, that in doing it he acts as their agent. But, interpreting certain expressions contained in it in the light afforded by a knowledge of the situation of the parties, there can be no doubt that he wrote it, not for himself, but for them. There is nothing in the case having any tendency to show that he ever made any such bargain on his own account, or that he ever had any such coal of his own to sell; but it is certain that he did make such a bargain with the plaintiff on behalf of the defendants, and on the same day communicated to the defendants the fact that he had made it. They resided at Philadelphia, and the letter obviously refers to them, when the plaintiff is told in it that the coal is ready for delivery at that place; that "you will forward vessels as soon as you please, and we will put the coal on board. Our people will use all exertions to procure vessels at going rates of freight, and I presume they will succeed. If not,

you must send vessels for it." These allusions could be to no persons but the defendants, who were thus distinctly pointed out as the party to be charged with the obligation of performing the contract referred to.

The signature of a memorandum which is a sufficient compliance with the provisions of the statute may be made by an agent, though he write his own name instead of that of his principal, if it was his intention that the latter should be bound by it. 2 Parsons on Con. 291. *Trueman* v. *Loder*, 11 Ad. & El. 589, and 3 P. & Dav. 267. *White* v. *Proctor*, 4 Taunt. 209.

There is a very slight variance, in the statement of the terms of the contract, between the letter of the 11th of July and the memorandum which Remington caused to be made of it on his book at Fall River. And in his letter of the 3d of June to the defendants, he omits to mention the one hundred tons of lump coal which was embraced in it. But in reference to the question arising upon the bill of exceptions, these variances are unimportant. The plaintiff made a verbal agreement with the defendants for the purchase of a quantity of coal. He subsequently called upon their agent for "a statement of our coal engagement;" and the letter of the 11th of July was written in answer to this application. It was sent, and was received, as an authentic statement of the terms and provisions of the previous bargain. It is immaterial that it does not, in all particulars, correspond with the items contained in the communication of Remington to his principals under date of the 3d of June, or in the memorandum which he caused to be placed on his own book at Fall River. These latter are of importance only as they serve to corroborate the other evidence in the case adduced to prove that a verbal contract had in fact been previously made by the parties. But having been written without the knowledge of the plaintiff, he could not have recognized what was thus stated to be true, or assented to it as correct, and of course is not to be bound by it. On the other hand, it cannot be doubted that, in preparing and furnishing to the purchaser, at his request, a written note of the verbal contract, the agent who made it would, with a vigilant and proper regard for

the rights of his principals, be careful to fall into no error in his representations. The letter which he wrote to the plaintiff professed, and purported upon its face, to recite with precision and accuracy the terms of the contract, and was received and accepted, and has ever since been relied upon, by him as a true and correct statement of it. Both parties having thus affirmed it and assented to its correctness, the memorandum contained in the letter of the 11th of July must be considered as conclusive evidence of the previous verbal bargain.

*Exceptions sustained.*